1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RICHARD ERNEST ANAYA,

11              Plaintiff,                No. CIV S-07-0029 GEB GGH P

12        vs.

13   ROSEANNE CAMPBELL, et al.,           <u>ORDER</u>

14              Defendants.               <u>FINDINGS & RECOMMENDATIONS</u>

15   _____/

16   I.  <u>Introduction</u>

17              Plaintiff is a state prisoner proceeding pro se who is presently housed at Mule

18   Creek State Prison.  He seeks relief pursuant to 42 U.S.C. § 1983 and the Americans with

19   Disabilities Act (ADA).  On September 17, 2007, plaintiff filed a motion for a temporary

20   restraining order.  In this motion, plaintiff alleged that he suffered from a rectal prolapse and

21   required knee surgery.  Plaintiff alleged that defendants were recommending his placement in a

22   job that would exacerbate his medical problems.  Plaintiff also alleged that defendants refused to

23   provide him with knee surgery as well as a walking cane, crutches, knee brace or walker.

24   Plaintiff claimed that he required grab rails to use the toilet and a private bathroom.

25              On September 28, 2007, plaintiff filed a "motion for response" to his temporary

26   restraining order.  In this pleading, plaintiff claimed that he injured his back on September 14,

1  2007, and the September 21, 2007, x-ray confirmed this injury.  Plaintiff also alleged that

2  defendants were still forcing him to work in a job that he was not physically capable of

3  performing.

4          On October 15, 2007, plaintiff filed a letter which the court construed as

5  containing a request for injunctive relief.  Plaintiff alleged that he was denied law library access

6  in retaliation for filing this action.  Plaintiff also alleged that he was up for transfer to a new

7  prison.  Plaintiff also alleged that because of his recent knee surgery, he should not be

8  transferred.  He also claimed that his back was in pain.

9          On October 19, 2007, the court ordered defendants to file a response to plaintiff's

10  September 17, 2007, and October 15, 2007, pleadings within twenty days.  On October 19, 2007,

11  after filing of this court's order of the same day, the Ninth Circuit transmitted an order indicating

12  that the district court had no more than 14 days to address plaintiff's motions.  Accordingly, on

13  that date this court issued a second order directing defendants to file a response to plaintiff's

14  motions on or before October 29, 2007.

15          On October 25, 2007, plaintiff filed a letter with the court alleging that on

16  September 24, 2007, he had a work related back injury caused as he was trying to lift himself up

17  from a toilet.  Plaintiff alleged that the x-ray taken of this injury did not show the extent of his

18  injury, and that he required an MRI.

19          On October 29, 2007, defendants filed a response to plaintiff's motions.  On

20  November 2, 2007, plaintiff filed a reply.  In this pleading, plaintiff alleges that on September 15,

21  2007, he injured his back as he was trying to lift himself up from a toilet.

22          After carefully considering the record, the court recommends that plaintiff's

23  motions be denied in part.  The court orders further briefing as to some of plaintiff's claims.

24  II.  Legal Standard for Injunctive Relief

25          Because the accurate facts regarding prison conditions are rarely readily available

26  simply on the filing of a plaintiff's claims, and because the entry of temporary restraining orders

2

1  can rarely be adapted to the relief that prisoners seek in court even if that relief is ultimately

2  found to be warranted, and finally, because orders "shot from the hip" are rarely compliant with

3  the deference owed prison administrators, the undersigned asked for further briefing, and treats

4  plaintiff's request for a temporary restraining order as a motion for preliminary injunction.[1]

5          The legal principles applicable to a request for preliminary injunctive relief are

6  well established.  "The traditional equitable criteria for granting preliminary injunctive relief are

7  (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff

8  if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4)

9  advancement of the public interest (in certain cases)."  Dollar Rent A Car v. Travelers Indem.

10 Co., 774 F.2d 1371, 1374 (9th Cir. 1985).  The criteria are traditionally treated as alternative

11 tests.  "Alternatively, a court may issue a preliminary injunction if the moving party demonstrates

12 'either a combination of probable success on the merits and the possibility of irreparable injury or

13 that serious questions are raised and the balance of hardships tips sharply in his favor.'"  Martin

14 v. International Olympic Comm., 740 F.2d 670, 675 (9th Cir. 1984) (quoting William Inglis &

15 Sons Baking Co. v. ITT Continental Baking Co., 526 F.2d 86, 88 (9th Cir. 1975)).  The Ninth

16 Circuit has reiterated that under either formulation of the principles, if the probability of success

17 on the merits is low, preliminary injunctive relief should be denied:

18          Martin explicitly teaches that "[u]nder this last part of the
           alternative test, even if the balance of hardships tips decidedly in
19         favor of the moving party, it must be shown as an irreducible
           minimum that there is a fair chance of success on the merits."

20

21 Johnson v. California State Bd. of Accountancy, 72 F.3d 1427, 1430 (9th Cir. 1995) (quoting

22

23         [1]The court must also be cognizant of a prisoner's attempt to use the litigation process to
       routinely jump ahead of other needy prisoners in the prison services line, and to deprive other
24     less frequent litigants of the attention their cases deserve.  Plaintiff Anaya has filed three other
       cases in this court aside from his present one: CIV-S-06-2320, 04-544 MCE KJM, and 04-508
25     MCE DAD.  The 2004 MCE KJM case involved allegations concerning the conditions
       complained of here.   While the number of cases plaintiff has filed is not so extraordinary  as to
26     draw any inference of abuse of the legal process, the undersigned is beginning to have some
       concern in this area.

1  Martin, 740 F.2d at 675).

2  III.  Legal Standards for Eighth Amendment and ADA

3          *Eighth Amendment*

4          In order to state a § 1983 claim for violation of the Eighth Amendment based on

5  inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

6  deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct.

7  285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively

8  serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter,

9  501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir.

10  1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference."

11  Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

12          A serious medical need exists if the failure to treat a prisoner's condition could

13  result in further significant injury or the unnecessary and wanton infliction of pain.  Indications

14  that a prisoner has a serious need for medical treatment are the following:  the existence of an

15  injury that a reasonable doctor or patient would find important and worthy of comment or

16  treatment; the presence of a medical condition that significantly affects an individual's daily

17  activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900

18  F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01

19  (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other

20  grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

21          In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court

22  defined a very strict standard which a plaintiff must meet in order to establish "deliberate

23  indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978.

24  However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm

25  which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979.

26  Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

4

1  should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

2          It is nothing less than recklessness in the criminal sense – subjective standard –

3  disregard of a risk of harm of which the actor is actually aware.  Id. at 838-842, 114 S. Ct. at

4  1979-1981.  "[T]he official must both be aware of facts from which the inference could be drawn

5  that a substantial risk of serious harm exists, and he must also draw the inference."  Id. at 837,

6  114 S. Ct. at 1979.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk

7  of serious harm and disregards that risk by failing to take reasonable measures to abate it."  Id. at

8  847, 114 S. Ct. at 1984.  "[I]t is enough that the official acted or failed to act despite his

9  knowledge of a substantial risk of serious harm."  Id. at 842, 114 S. Ct. at 1981.  If the risk was

10  obvious, the trier of fact may infer that a defendant knew of the risk.  Id. at 840-42, 114 S. Ct. at

11  1981.  However, obviousness per se will not impart knowledge as a matter of law.

12          Also significant to the analysis is the well established principle that mere

13  differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

14  Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,

15  662 F.2d 1337, 1344 (9th Cir. 1981).

16          Moreover, a physician need not fail to treat an inmate altogether in order to violate

17  that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.

18  1989).  A failure to competently treat a serious medical condition, even if some treatment is

19  prescribed, may constitute deliberate indifference in a particular case.  Id.

20          Additionally, mere delay in medical treatment without more is insufficient to state

21  a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766

22  F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is

23  no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing

24  Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-

25  1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends

26  to provide additional support for a claim of deliberate indifference; however, it does not end the

1  inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the

2  medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those

3  needs, the more likely it is that a plaintiff has established deliberate indifference on the part of

4  the defendant."  McGuckin, 974 F.2d at 1061.

5          *ADA*

6          Title II of the ADA applies to inmates in state prison.  Armstrong v. Wilson, 124

7  F.3d 1019, 1023 (9th Cir. 1997).  In order to state a claim of disability discrimination under Title

8  II of the ADA plaintiff must allege four elements: 1) he is an individual with a disability; 2) he

9  was otherwise qualified to participate in or receive the benefit of some public entity's services,

10 programs, or activities; 3) he was either excluded from participation in or denied the benefits of

11 the public entity's services...or was otherwise discriminated against by the public entity; and 4)

12 such exclusion, denial...or discrimination was by reason of his disability."  McGary v. City of

13 Portland, 386 F.3d 1259, 1265 (9th Cir. 2004).

14         " A public entity shall make reasonable modifications in policies, practices, or

15 procedures when the modifications are necessary to avoid discrimination on the basis of

16 disability, unless the public entity can demonstrate that making the modifications would

17 fundamentally alter the nature of the services, program, or activity."  28 C.F.R. § 35.130(b)(7).

18 IV.  Discussion

19         *ADA Claims*

20         The court first considers plaintiff's motion for injunctive relief as to his ADA

21 claims.  In his January 5, 2007, complaint, plaintiff alleges that he received a rules violation

22 report for not reporting to his job or education program because defendants failed to provide him

23 with surgery, a cane, crutches or grab bars.  Although not entirely clear from the September 17,

24 2007, and October 15, 2007, pleadings, plaintiff appears to be making a similar claim in these

25 pending motions.

26 /////

1           Attached to defendants' opposition is a declaration by defendant Dr. Smith

2  addressing the issues raised by plaintiff's ADA claims.  Defendant Smith states that on

3  September 26, 2007, plaintiff underwent arthroscopic surgery for repair of the anterior cruciate

4  ligament of his right knee at the UC Davis Medical Center.  Smith decl., ¶ 4.  Plaintiff had a

5  follow up visit for his knee surgery at the UC Davis Medical Center on October 15, 2007.  Id.

6  There are no complications from this surgery.  Id.

7           Plaintiff presently has a physician's lay-in.  Id., ¶ 6.  The physician's lay-in

8  excuses plaintiff from attending school or working and requires him to remain in his housing unit

9  while he recuperates from surgery.  Id.  Plaintiff has been referred to physical therapy for his

10  knee and has also been prescribed Vicodin for pain.  Id., ¶ 7.  He is currently provided with a

11  wheelchair.  Defendants' Opposition, Exhibit B, ¶ 6.

12           Plaintiff has a history of rectal prolapse which was surgically repaired at the UC

13  Davis Medical Center in December 2003.  Defendants' Opposition, Exhibit A,  ¶ 9.  According

14  to defendant Dr. Smith, no other surgery is required and the condition does not require a raised

15  toilet seat, grab rails or a private bathroom.  Id., ¶ 9.  However, plaintiff is single celled at his

16  request.  Defendants' Opposition, Exhibit B, ¶ 3.

17           According to defendants, although plaintiff presently has a physician's lay in, he

18  had previously been required to attend school in lieu of a job assignment based on his tested

19  grade level.  Id., ¶ 5.  An inmate restroom is located adjacent to the classrooms and is readily

20  available to Mr. Anaya when he attends class.  Id., ¶ 6.  The restroom is clean and regularly

21  maintained in a sanitary condition by inmates under the supervision of prison staff.  Id.

22           Attached to plaintiff's September 28, 2007, pleading is a copy of a 602 dated

23  September 10, 2007.  The response by a Correctional Counselor whose name the court cannot

24  read states that plaintiff has been cleared for either an education assignment or porter position.

25           On October 12, 2007, a classification committee recommended that plaintiff be

26  transferred to High Desert State Prison (HDSP).  Defendants' Opposition, Exhibit B, ¶¶ 11-12.

1    Salinas Valley Prison was selected as an alternative.  Id.

2              Turning to the merits of the pending motions, because plaintiff has a physician's

3    lay-in at this time, he is not participating in any program under the ADA.   In addition, he has

4    been recommended for transfer to HDSP.  Arguably, his claims for injunctive relief are moot.

5    However, because it is not certain that he will be transferred before he is able to return to school

6    or assigned to a porter position, the court considers the merits of his motion.

7              Because plaintiff has presented evidence demonstrating that he is approved for a

8    porter position in addition to school, and because he alleges in his pleadings to have suffered

9    "work related" injuries, the court finds that plaintiff's claims apply to both school and work

10   assignments.

11             While plaintiff suggests that he was unable to attend school and/or his job prior to

12   his surgery because he was not given a cane or crutches, plaintiff has now received his surgery.

13   There is no evidence demonstrating that defendants will deny plaintiff access to a cane or

14   crutches following his surgery, assuming these items are needed.  Accordingly, plaintiff has not

15   demonstrated a likelihood of success on the merits as to this claim.

16             Plaintiff also complains that he does not have access to a private bathroom.

17   Because he is single celled, it appears that he is claiming that he cannot attend school or his job

18   because the school and job sites are not equipped with a private bathroom.  Attached as an

19   exhibit to the complaint is a form entitled "Absence Excuse" dated March 20, 2006, and signed

20   by two doctors from the UC Davis Medical Center.  Complaint, p. 41 of 59.  The form states that

21   plaintiff should not use public restrooms and should be allowed use of a private restroom at all

22   times.  Id.

23             Plaintiff is, in essence, requesting that defendants be required to construct a

24   private restroom for him at the school and/or his job site in order to accommodate his disability.

25   While the court acknowledges the apparent seriousness of plaintiff's condition, based on the

26   evidence before the court at this time it does not find that requiring defendants to provide

1  plaintiff with a private restroom at the school and or job site that apparently only he is allowed to

2  use is a reasonable accommodation.  Accordingly, plaintiff has not demonstrated a likelihood of

3  success on the merits of this claim.

4           Plaintiff also complains that he does not have grab bars.  The court has ordered

5  defendants to file further briefing addressing plaintiff's related Eighth Amendment claim

6  regarding his need for the grab bars as it pertains to his rectal prolapse.  For this reason, the court

7  will defer ruling on plaintiff's related ADA claim.

8           In the discussion of plaintiff's Eighth Amendment claims, the court also found

9  that plaintiff's claim that he needed  grab bars based on his knee injury was made prior to his

10  surgery.  As discussed infra, there is no evidence that plaintiff will require grab bars based on his

11  knee injury post-surgery.  For the reasons discussed below, the court finds that plaintiff has not

12  demonstrated that he will be denied access to school or a job based on his knee problems because

13  the bathrooms in these areas do not have grab bars.

14           For the reasons discussed above, plaintiff's motions for injunctive relief pursuant

15  to the ADA should be denied but for his claim regarding his need for grab bars based on his

16  rectal prolapse.

17           *Eighth Amendment*

18           The court pauses to again reflect on the legal context of plaintiff's requests– the

19  Eighth Amendment.  If the standard here were simply based on what is reasonably necessary to

20  mitigate plaintiff's medical conditions, there might well be preliminary relief ordered on a

21  number of fronts.  However, the standard here is whether plaintiff has shown a fair chance of

22  success in demonstrating that defendants are acting with *deliberate indifference* to plaintiff's

23  medical needs.  This is a much more difficult standard to meet in the preliminary injunction

24  setting.

25           The court first considers plaintiff's request for knee surgery.  As discussed above,

26  plaintiff has now received that surgery.  According to Dr. Smith, plaintiff's follow-up visit at the

1  UC Davis Medical Center indicated that there were no complications.  However, in his

2  November 2, 2007, reply, plaintiff now claims that on October 15, 2007, he damaged his knee

3  apparently during the follow-up visit.  Plaintiff claims that he was forced to bend his knee and

4  now it is loose again, slips in and out of its socket and is painful.  Defendants are ordered to file a

5  supplemental response to this claim.

6         Plaintiff next alleges that defendants denied him a cane, crutches, a knee brace

7  and a walker.  These claims were made prior to plaintiff's knee surgery.  At this time, plaintiff

8  has a physician's lay-in and access to a wheelchair.  There is no evidence in the record regarding

9  whether plaintiff will require a cane, crutches, knee brace or a walker during his recovery from

10  surgery or that any of these items will be denied.  Accordingly, the court finds that plaintiff has

11  not demonstrated the possibility of irreparable harm if his request for these items is not granted.

12         Plaintiff next alleges that he has been denied a private bathroom and grab rails.

13  As discussed above, plaintiff has a note from Dr. Bromer and Dr. Vidowsky at the UC Davis

14  Medical Center dated March 20, 2006, stating that plaintiff should not use public restrooms and

15  should be allowed use of a private restroom at all times.  In contrast, defendant Dr. Smith states

16  in his declaration that plaintiff's rectal prolapse does not require a private bathroom.

17         Based on the conflicting opinions regarding plaintiff's need for a private restroom,

18  the court finds that plaintiff has not demonstrated the possibility of irreparable injury if his

19  request for access to a private restroom at the school or job is not granted.  Moreover, the Davis

20  doctors' opinions as to the need for private restrooms, while perhaps feasible for a person in the

21  regular community, are problematic in the prison context.  Clearly, it is not generally feasible to

22  construct private bathrooms in a prison setting, and wherever a prisoner may be sent for work or

23  training.  In most cases, the need for a private bathroom will preclude that prisoner from

24  wandering far from his prison cell.  That is the situation plaintiff finds himself in now, and it is

25  unrealistic to order otherwise, i.e., with respect to the construction of private bathrooms on prison

26  grounds (or denying all other prisoners any access to existing bathrooms), the balance of

1   hardships tips sharply in the defendants' favor.

2          The record also contains conflicting opinions regarding plaintiff's need for grab

3   bars.  Defendant Dr. Smith states that plaintiff does not require grab bars based on his rectal

4   prolapse.  Attached to plaintiff's reply to defendants' opposition is a letter dated December 18,

5   2006, to defendant Smith from Dr. Chamie at the UC Davis Medical Center.  Dr. Chamie states,

6   in relevant part,

7               With regard to his prison facility, the patient reports that he has an easier time
               with an accommodation rail near his toilet.  I suspect that removing pressure off
8               the abdominal musculature would be less likely to exacerbate the prolapse than
               pure abdominal strain; however, I will defer to Dr. Vidowsky for any suggestion.
9

10          Dr. Chamie's letter indicates that use of the grab rails may make exacerbation of

11  plaintiff's rectal prolapse less likely because it will remove pressure from the abdominal

12  structure.  Dr. Chamie does not address whether plaintiff's knee injury requires him to have grab

13  bars.  In his latest pleadings, plaintiff alleges that he requires the grab bars to prevent himself

14  from falling.  In his complaint, plaintiff alleges he needs the grab bars for both his knee and the

15  rectal prolapse.  Complaint, p. 11.

16          Plaintiff's alleged falls caused by a lack of grab bars were related to his knee

17  problems and not his rectal prolapse.  These falls occurred before his knee surgery.  Plaintiff's

18  alleged need for grab bars based on his knee problems changed following his surgery.

19  Presumably, the surgery corrected the problem that caused plaintiff's need for grab bars.

20  Because there is no evidence that plaintiff will require the grab bars based on his knee problems

21  following this surgery, plaintiff has not demonstrated that he will suffer an irreparable injury if

22  his motion for injunctive relief is not granted on this ground.

23          With respect to plaintiff's need for grab bars as it relates to his rectal prolapse,

24  defendant Dr. Smith states that they are not required.  Dr. Chamie states that use of the grab bars

25  may remove pressure off the abdominal musculature which would be less likely to exacerbate the

26  prolapse than pure abdominal strain.  Dr. Chamie states that he would defer to Dr. Vidowsky for

1   any suggestion.

2          Dr. Chamie's comments do not indicate that the grab bars are medically necessary

3   for plaintiff's rectal prolapse problems.  Nevertheless, defendants are ordered to file further

4   briefing addressing Dr. Chamie's suggestion that use of the grab bars may cause the prolapse to

5   be less exacerbated and, if so, whether the grab bars are medically necessary.  Defendants shall

6   also address whether Dr. Vidowsky provided a further opinion regarding this matter.

7          With respect to plaintiff's claim that he is not receiving adequate treatment for a

8   back problem, in his various pleadings plaintiff alleges that he fell and hurt his back on three

9   different occasions: September 14, 2007 (September 28, 2007, pleading), September 15, 2007

10  (November 2, 2007, pleading) and September 24, 2007 (October 25, 2007, pleading).  Plaintiff

11  also alleges that his back is in great pain.  Plaintiff's description of the September 15, 2007,

12  incident is identical to the description of the September 24, 2007, i.e. he was using a garbage can

13  that was on top of a toilet next to the one he was using to hoist himself up and it buckled, causing

14  him to fall.  Based on these descriptions, it appears that plaintiff has confused the dates the

15  injuries occurred and that he actually suffered one fall, on either September 14, 2007, or

16  September 15, 2007.

17         In his declaration defendant Dr. Smith states that plaintiff had an x-ray of his

18  lumbar spine for low back complaints.  Defendants' Opposition, Exhibit A, ¶ 8.  The x-ray was

19  unremarkable with some minor arthritic changes observed.  Id.  A copy of this report is attached

20  to plaintiff's November 2, 2007, reply.  The report of the report indicates that the x-ray was taken

21  on September 21, 2007.

22         Plaintiff alleges that his back is in acute pain and that the x-ray does not show the

23  true extent of his injuries.  Plaintiff requests that defendants be ordered to provide an MRI.

24  Plaintiff's claim of acute back pain is inconsistent with the results of the x-ray.  Defendants are

25  ordered to file further briefing addressing what steps they are taking to address plaintiff's back

26  pain and whether an MRI is warranted based on this complaint.

Plaintiff next argues that his medical problems prohibit his transfer to a different prison.  Plaintiff's main concerns in his October 15, 2007, pleading are that the transfer will take up to three days and that during the transport, inmates are held in small seated cages for up to 8 to 11 hours.  Plaintiff also expresses concern that his pain will not be managed during the transport.

In his declaration, defendant Dr. Smith states that neither plaintiff's recent knee surgery nor his rectal prolapse prevent his transfer to another prison.  Opposition, Exhibit A, ¶¶ 10-11.  Pain medications are available to be carried on the bus during transportation of inmates.  Id., ¶ 12.

With respect to other aspects of the transfer logistics, defendants provide the following information:

> 3.  Inmate transportation to other prisons is normally done by CDCR Transportation.  A large commercial-type bus with individual seats is used.  The bus has a restroom located in the rear, and with permission inmates are allowed to use the restroom.  Inmates are permitted to stand up or stretch in the aisle with permission to accommodate complaints of stiffness in the legs.
>
> 4.  Prior to the transport, a Registered Nurse reviews the unit health record for medical concerns of each inmate.  Any medical issues that may be impacted by the transportation are addressed, discussed with a physician as necessary, and accommodated.  An inmate is also provided with any necessary pain medications.
>
> 5.  If a inmate's medical conditions prevent transfer by bus, special arrangements are made to transport the inmate by prison staff using a van.  Again, all of the inmate's medical needs are addressed and accommodated prior to the transport, and the inmate is provided with any necessary pain medication.
>
> 6.  The normal transportation time from MCSP to High Desert State Prison is approximately 8 hours.  The normal transportation from MCSP to Salinas Valley State Prison is approximately 4 hours.

Defendants' Opposition, Exhibit C.

Plaintiff's concerns are addressed in defendants' opposition.  The transfers can take place in one day.  In addition, plaintiff will have access to pain medication and will be permitted to stretch his legs.  In addition, if prison officials determine that his medical conditions

1   warrant transfer by van rather than bus, they will make the appropriate orders.  The court finds

2   that plaintiff has not demonstrated the existence of a threat of irreparable harm if he is transferred

3   to a different prison.

4          Finally, in his October 15, 2007, letter, plaintiff alleges that prison officials,

5   presumably other than defendants, have retaliated against him for filing this action by not

6   allowing him adequate access to the law library and by refusing to make copies.  Plaintiff's

7   complaint does not contain such claims, and his request is more in the nature of a protective

8   order.  However, even assuming that these new allegations are susceptible of injunctive relief,

9   they are insufficient.

10         According to defendants, prison records indicate that plaintiff has visited the law

11  library 24 times in the past 8 months.  Opposition, Exhibit B, ¶ 9.  His visits have lasted up to 2

12  ½ hours per stay.  Id.  Defendants do not list the dates on which plaintiff had law library access

13  and nor do they address plaintiff's claim that prison officials refused to make copies.  However, a

14  review of plaintiff's recent pleadings in this case indicates that plaintiff has had adequate law

15  library access as well as access to copies.  Accordingly, plaintiff has not demonstrated the

16  existence of a threat of irreparable harm if he is not granted injunctive relief as to this claim.

17         Accordingly, IT IS HEREBY ORDERED that:

18         1.  Within ten days of the date of this order, defendants shall file the further

19  briefing discussed above regarding plaintiff's post-knee surgery complaints, treatment for back

20  pain and access to a grab bar;

21         2.  Plaintiff's September 28, 2007, motion for a response is construed as further

22  briefing in support of his request for injunctive relief;

23         IT IS HEREBY RECOMMENDED that plaintiff's September 17, 2007, motion

24  for a temporary restraining order and October 15, 2007, letter, construed as a request for

25  preliminary injunctive relief, be denied as to all claims but for those concerning plaintiff's access

26  to grab bars, treatment for back pain and his post knee-surgery complaints.

1     These findings and recommendations are submitted to the United States District

2 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within five (5)

3 days after being served with these findings and recommendations, any party may file written

4 objections with the court and serve a copy on all parties.  Such a document should be captioned

5 "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6 shall be served and filed within ten days after service of the objections.  The parties are advised

7 that failure to file objections within the specified time may waive the right to appeal the District

8 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9 DATED: November 9, 2007

10

11                                             /s/ Gregory G. Hollows

12 _____                  UNITED STATES MAGISTRATE JUDGE

13

14
   an29.pi
15

16

17

18

19

20

21

22

23

24

25

26