IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD ERNEST ANAYA,

    Plaintiff,                          No. CIV S-07-0029 GEB GGH P

    vs.

ROSANNE CAMPBELL, et al.,        <u>ORDER AND</u>

    Defendants.                  <u>FINDINGS & RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. On June 16, 2008, plaintiff filed a motion for an emergency preliminary injunction regarding conditions at High Desert State Prison (HDSP), where he is currently housed. On June 26, 2008, the court issued an order observing that no defendants at HDSP had been served with the amended complaint. Nevertheless, the court stated that it intended to act on plaintiff's request for injunctive relief on July 10, 2008, and ordered that defendants could respond to plaintiff's June 16, 2008, request for injunctive relief on or before that date.

        On July 16, 2008, the Ninth Circuit Court of Appeals denied plaintiff's emergency petition for a writ of mandamus without prejudice to this court's ruling on his motions for emergency injunctions filed June 16, 2008, *and* June 25, 2008, within thirty days.

1

The instant findings and recommendations address both the June 16, 2008, and June 25, 2008, motions for injunctive relief. For the following reasons, the court recommends that these motions be denied.

II. <u>Legal Standard for Injunctive Relief</u>

The legal principles applicable to a request for preliminary injunctive relief are well established. "The traditional equitable criteria for granting preliminary injunctive relief are (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if the preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)." <u>Dollar Rent A Car v. Travelers Indem. Co.</u>, 774 F.2d 1371, 1374 (9th Cir. 1985). The criteria are traditionally treated as alternative tests. "Alternatively, a court may issue a preliminary injunction if the moving party demonstrates '<u>either</u> a combination of probable success on the merits and the possibility of irreparable injury <u>or</u> that serious questions are raised and the balance of hardships tips sharply in his favor.'" <u>Martin v. International Olympic Comm.</u>, 740 F.2d 670, 675 (9th Cir. 1984) (quoting <u>William Inglis & Sons Baking Co. v. ITT Continental Baking Co.</u>, 526 F.2d 86, 88 (9th Cir. 1975)). The Ninth Circuit has reiterated that under either formulation of the principles, if the probability of success on the merits is low, preliminary injunctive relief should be denied:

> <u>Martin</u> explicitly teaches that "[u]nder this last part of the alternative test, even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits."

<u>Johnson v. California State Bd. of Accountancy</u>, 72 F.3d 1427, 1430 (9th Cir. 1995) (quoting <u>Martin</u>, 740 F.2d at 675).

III. <u>Eighth Amendment</u>

*Legal Standard for Eighth Amendment Medical Claim*

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence

deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837,

114 S. Ct. at 1979.  Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S. Ct. at 1984.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981.  If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S. Ct. at 1981.  However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989).  A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." McGuckin, 974 F.2d at 1061.

/////

*Legal Standard for Eighth Amendment Failure to Protect Claim*

"[P]rison officials have a duty...to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833, 114 S.Ct. 1970 (1994). A violation of that can constitute cruel and unusual punishment under the Eighth Amendment." Id., 511 U.S. at 832, 114 S.Ct. 1970. However, "not...every injury suffered by one prisoner at the hands of another...translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834, 114 S.Ct. 1970.

To establish liability under the Eighth Amendment for a prison official's failure to protect an inmate from harm, the prisoner must establish that the official was deliberately indifferent to a substantial risk of serious harm to the inmate. Id. at 828, 834, 114 S.Ct. 1970.

III. Discussion

Plaintiff's June 16, 2008, motion alleged that he was being double celled despite his medical need for single cell status. Plaintiff also claimed that prison officials placed him into "rooster fighting" situations with his cellmates. Plaintiff alleged that he had three fights with three different cellmates. Plaintiff also alleged that he required grab bars in his cell and that he was not receiving adequate pain relief. Plaintiff also claimed that he was being denied single cell status in retaliation for his legal activities.

Plaintiff claimed that in the beginning of March he was assaulted by inmate Lut. Plaintiff claimed that he was knocked unconscious during this assault. Plaintiff claimed that on June 5, 2008, he gave Correctional Officer Young three pages of stated facts stating that inmate Lut had placed a bounty on his head. Plaintiff also claimed that there were crip gangs on the B-Yard, where he was housed.

Plaintiff claimed that on June 5, 2008, he was forced to house with inmate Soirda who was his enemy. Plaintiff claimed that he told prison staff that inmate Soirda was his enemy and instead of helping plaintiff, they pulled him out of his cell and put plaintiff in administrative segregation and charged him with attempted battery on inmate Soirda.

1 In the motion filed June 25, 2008, plaintiff again alleged that he was being denied single cell status, adequate pain medication and grab bars. Plaintiff alleged that his medical condition caused violence between him and his cellmates. Plaintiff also claimed that at his annual review hearing, Associate Warden Perez and Correctional Counselor Hawl told him that if he really wanted single cell status, he should kill his cellmate or, preferably, a child molester. Plaintiff also claimed that he was being denied single cell status in retaliation for his legal activities.

On July 10, 2008, defendants filed an opposition to the June 16, 2008, motion for injunctive relief. Because plaintiff's June 25, 2008, motion raises substantially the same claims as the June 16, 2008, motion, the court did not order further briefing from defendants.

The court first considers plaintiff's medical need for single cell status. Defendants submitted the declaration of N. Acquaviva, the Health Care Manager at HDSP. N. Acquaviva states that plaintiff was evaluated by the mental health department at HDSP regarding his request for a single cell. Acquaviva declaration, ¶ 4. Mental health staff determined that plaintiff did not require a single cell based on his mental health condition. Id. Plaintiff also suffers from occasional incontinence due to his rectal prolapse condition. Id., ¶ 5. Medical staff issued a chrono providing that plaintiff receive a daily shower to accommodate any hygiene issues relating to his rectal prolapse. Id. Medical staff did not determine that his condition required single cell status. Id.

Because defendants have presented evidence that plaintiff has no medical need for single cell status, which plaintiff has not opposed with any expert medical evidence, the court finds that plaintiff has not demonstrated a likelihood of success as to the merits of this claim. While it is likely that single cell status would be more comfortable for plaintiff based on the issues associated with his rectal prolapse, the standard for an Eighth Amendment claim is deliberate indifference and not comfortableness. Accordingly, the motion for injunctive relief as to this claim should be denied.

The court next considers plaintiff's claim that he was placed in "rooster fighting" situations with his cellmates and that he was told that in order to be single celled, he would have to fight his cellmates. The declaration of J. Bishop, the Litigation Coordinator at HDSP, attached to defendants' opposition addresses this issue:

> 2. Plaintiff Anaya (P-36075) arrived at HDSP on November 14, 2007. After initial screening, he was placed on B yard. B yard is a special needs yard (SNY). Gangs and inmates with gang affiliations are not allowed on B yard. A requirement for placement on a SNY is that inmates renounce all gang affiliations.
>
> 3. I have reviewed Plaintiff Anaya's central file regarding known enemies. Mr. Anaya had no enemies listed in his central file at the time he was placed on B yard.
>
> 4. I have reviewed Plaintiff Anaya's central file regarding cell placement and fights. After arrival at HDSP, Mr. Anaya was placed in a single cell in B yard, and placed on orientation status. An inmate in orientation status is confined to his cell pending review by the Institution Classification Committee (ICC). On December 5, 2007, the ICC cleared Mr. Anaya for double cell status on B yard. He was then obligated to accept a cellmate who was also a SNY inmate. He was never placed in a cell with a documented enemy.
>
> 5. There are records of two fights between Mr. Anaya and another inmate during the time he was housed on B yard. The first fight occurred on or about March 13, 2008, in the dining room for B facility, and involved Mr. Anaya and inmate Lett. Records and witness statements indicate that Mr. Anaya became involved in an argument [sic] inmate Lett in the kitchen area, picked up a food temperature gauge, and approached inmate Lett with it. Thereafter, as both inmates walked past the office door for the kitchen, inmate Lett started punching inmate Anaya. Custodial staff immediately responded. Mr. Anaya did suffer numerous injuries to his face and one to the back of his head and receive medical care for his injuries. The medical report of the incident records that Mr. Anaya stated that he "slipped."
>
> 6. When two inmates are involved in a fight on a general population facility, normal procedure involves separation of the combatants, and a subsequent private interview of each combatant by supervisory custody staff to determine the cause(s) of the fight, and whether any safety or enemy concerns exist. Based on the findings of the interview and a review of staff observations, supervisory staff may elect to place one or both of the combatants into administrative segregation pending further investigation. Placement in administrative segregation results in automatic restriction of property under prison regulations for safety and security reasons. If, however, no cause exists to believe that any enemy or safety concerns exist based on the fight, the combatants may be offered the opportunity to sign a "compatibility agreement" chrono (CDCR Form 128B) indicating that they do not consider each other enemies, and agreeing to coexist peaceably on the same facility. Inmates Anaya and Lett signed such an agreement. A copy of this chrono is attached as Exhibit A. Signing of this chrono permitted both inmates to remain

on B yard.

7. Plaintiff Anaya was involved in a second fight on June 5, 2008, during escort to the B Facility Program Office. After placing Plaintiff in waist restraints, Officers Tuter and Wellborn began escorting Plaintiff from his cell the Program Office. After stepping out of his cell, Mr. Anaya abruptly broke away from the correctional officers, began running toward inmate Soirda (F-70018) and raised his crutches in an attempt to strike inmate Soirda. The officers grabbed the plaintiff, ordered him to "get down," and then pushed him down when the Plaintiff refused to comply with the order. A copy of a portion of the Rules Violation Report describing the incident is attached as Exhibit B.

8. At the time of the attack by Plaintiff on June 5, 2008, inmate Soirda was not an enemy of Mr. Anaya and was assigned to the same cell as the Plaintiff.

9. As a result of this attack by Plaintiff on June 5, 2008, he was placed in administrative segregation. A serious Rules Violation Report alleging attack by Mr. Anaya on an inmate was also prepared. If Mr. Anaya is found guilty of this attack, he may be placed in a security housing unit for a determinate term.

10. An ICC hearing was held for Mr. Anaya on June 12, 2008, following his placement in administrative segregation. This hearing was held pursuant to prison regulations. The ICC determined that no current medical chronos or orders required placement in a single cell. Plaintiff was designated double cell status in administrative segregation, to be housed with a SNY cellmate only.

Contrary to plaintiff's conclusory claim, defendants' evidence demonstrates that there are no gang members on the SNY yard, where plaintiff is housed. Defendants have also presented evidence that plaintiff has no known enemies on the SNY yard.

Plaintiff's claim that prison officials at HDSP forced him to engage in "rooster fights" in order to get a single cell is not supported by the evidence. The evidence demonstrates that neither plaintiff's medical nor security needs warrant single cell placement under the Eighth Amendment. Therefore, when plaintiff attacked his cellmate inmate Soirda, it was by his own choice in an apparent attempt to manipulate prison officials into giving him a single cell.

There is no evidence that plaintiff's conflict with inmate Lett warranted single cell status. Defendants do not dispute that plaintiff was assaulted by inmate Lett, to whom plaintiff refers to as "Lut." However, defendants have also presented the compatibility chrono signed by plaintiff and inmate Lett stating that neither inmate considers the other inmate an enemy. Defendants' Opposition, Exhibit A. This chrono undermines plaintiff's claim that he is in danger

8

from inmate Lett.

For the reasons discussed above, the court finds that plaintiff has not demonstrated a likelihood of success on the merits as to his claim that his safety concerns warrant his placement in a single cell.

With regard to plaintiff's claim that he is not receiving adequate pain medication, N. Acquaviva states that plaintiff has an ongoing prescription for daily medication which is narcotics. Acquaviva declaration, ¶ 8. At this time, plaintiff receives MS Contin, a long-acting morphine based drug. Id. Because plaintiff is receiving MS Contin, the court finds that he has not demonstrated the possibility of irreparable harm if the court does not order defendants to provide him with pain medication.

With regard to plaintiff's claim that he requires grab bars, defendants previously addressed this issue in their response to an earlier request for injunctive relief. According to Dr. Teng, a physician at Mule Creek State Prison (MCSP) where plaintiff was previously housed, neither plaintiff's rectal prolapse nor his right knee problem require grab rails. Teng declaration, ¶ 5, filed November 19, 2007. While this declaration was filed approximately 8 months ago, nothing in the record suggests that plaintiff's medical conditions have changed for the worse, warranting the grab rails. According to N. Acquaviva, a commode chair was ordered for plaintiff that will assist him in his rectal prolapse condition when using the toilet, and assist him standing when using the toilet. Acquaviva declaration, ¶ 7. For these reasons, the court finds that plaintiff has not demonstrated a likelihood of success on the merits as to his claim that he requires grab bars.

Finally, there is no evidence in the record demonstrating that plaintiff is being denied single cell status in retaliation for his legal activities. Rather, the evidence demonstrates that plaintiff has no medical or security need for single cell status. Plaintiff has not demonstrated a likelihood of success on the merits of his claim that he is being denied single cell status in retaliation for his legal activities.

1  For the reasons discussed above, the court finds no evidentiary hearing is
2  necessary and recommends that plaintiff's motions for injunctive relief be denied.
3  IV. <u>Limiting Plaintiff's Motions for Injunctive Relief</u>
4  For the following reasons, the court recommends that plaintiff be limited to one
5  pending motion for injunctive relief.
6  Plaintiff originally filed this action on January 5, 2007.  Since that time, plaintiff
7  has filed 9 motions for injunctive relief:  January 24, 2007 (motion for preliminary injunction--
8  court file # 6), September 17, 2007 (motion for temporary restraining order--court file # 36),
9  September 28, 2007 (motion for response to temporary restraining order--court file # 38),
10 October 15, 2007 (letter requesting emergency stop to retaliatory conduct--court file # 39),
11 November 9, 2007 (letter requesting transfer–court file # 51), March 3, 2008 (letter requesting
12 law library access, single cell, etc.–court file # 72), May 29, 2008 (motion to stop
13 retaliation–court file # 86), June 16, 2008 (motion for preliminary injunction–court file # 91),
14 June 25, 2008 (motion for preliminary injunction–court file # 92).
15 Plaintiff has filed three petitions for writs of mandamus to the Ninth Circuit.  On
16 January 19, 2007, the Ninth Circuit denied the first petition for writ of mandamus.  On October
17 22, 2007, the Ninth Circuit denied the second petition for writ of mandamus without prejudice to
18 the filing of a new petition if this court did not address plaintiff's September 17, 2007, motion for
19 injunctive relief within 14 days.  On July 17, 2008, as discussed above, the Ninth Circuit denied
20 plaintiff's third petition for writ of mandamus without prejudice to this court's ruling on
21 plaintiff's motions for injunctive relief filed June 16, 2008, and June 25, 2008, within thirty days.
22 On July 7, 2008, plaintiff filed a pleading (court file no. 97) with the court stating that he
23 withdrew the latest petition for writ of mandamus on June 30, 2008.  The Ninth Circuit
24 apparently did not receive plaintiff's request to withdraw before it issued the July 17, 2008,
25 order.
26 /////

1       Meanwhile, the undersigned has now issued 3 findings and recommendations
2  addressing plaintiff's motions for injunctive relief.
3       In his July 7, 2008, letter (no. 97) plaintiff now complains that because he is in
4  solitary confinement in administrative segregation, presumably based on his attack of inmate
5  Soirda, he does not have adequate law library access, access to his commode chair, grab bars,
6  timely surgical intervention or pain medication. Plaintiff also alleges that he does not have an
7  adequate mattress or blankets and that he is being denied his legal property, television and prayer
8  oil. Plaintiff also complains that his cell has no desk.
9       On June 26, 2008, the court ordered plaintiff to submit 14 copies of his amended
10 complaint for service on defendants. In his July 7, 2008, letter plaintiff states that he could only
11 submit 5 copies of the complaint because prison officials refused to make all 14 copies.
12      On July 3, 2008, plaintiff filed a "motion to compel" requesting that the court
13 send him copies of all pleadings and orders filed in this action because prison officials informed
14 him that they lost his legal property.
15      The court does not have the resources to devote to plaintiff's piecemeal motions
16 for injunctive relief, which often include issues that have been previously addressed. The court
17 cannot monitor every aspect of plaintiff's incarceration while he is confined within the California
18 Department of Corrections and Rehabilitation. The undersigned has approximately 404 active
19 cases filed by prisoners (including civil rights and habeas petitions). Of course, in addition, the
20 undersigned maintains a calendar criminal calendar of misdemeanors, pretrial felony work, civil
21 discovery, civil consent cases, death penalty habeas corpus, first line adjudicative responsibility
22 for non-prisoner pro se civil cases, Social Security review and settlement conferences. Because
23 there are only a finite number of minutes available for work, judicial resources are a zero sum
24 game. Every minute spent on plaintiff's case herein is a minute not spent on another litigant's
25 case. It cannot treat plaintiff's case as if it were the most important simply based on the number
26 of filings by plaintiff.

1        For these reasons, the court orders that plaintiff is limited to one pending motion,
2 request, etc. at any one time.  Plaintiff shall not file another motion until the previously filed
3 motion is resolved by an order by the district court either adopting or rejecting findings and
4 recommendations issued by the undersigned.  Plaintiff's motions for injunctive relief shall not
5 raise issues that have been previously addressed and ruled on, such as his request for grab bars or
6 a single cell.  If the court determines that plaintiff's motions raise issues that have been
7 previously addressed, or plaintiff files a multiplicity of motions, it will recommend dismissal of
8 this action for plaintiff's failure to comply with court orders.
9        To the extent plaintiff requests court intervention in his July 7, 2008, letter, this
10 request is disregarded as it was not raised in a motion.  See Fed. R. Civ. P. 7(b).
11        If plaintiff is still unable to obtain the 9 additional copies of his complaint
12 necessary to effect service of defendants, he is granted ten days to file a declaration describing in
13 detail his attempts to obtain copies.  Plaintiff shall identify by name the prison official who
14 denied his request for copies.
15        With regard to plaintiff's access to his legal property, the court presumes that
16 because plaintiff is in administrative segregation he is not permitted to have his legal property in
17 his cell with him.  If prison officials are still representing to plaintiff that his legal property is lost
18 and cannot be found, plaintiff shall file a short declaration informing the court of his attempts to
19 gain access to his legal property and identifying the prison official by name who told him the
20 property was lost and could not be found.
21        Accordingly, IT IS HEREBY ORDERED that:
22        1. Within ten days of the date of this order, plaintiff shall either submit 9 copies
23 of his amended complaint for service or else a declaration describing in detail his attempts to
24 obtain these copies; if plaintiff's legal property is still lost, plaintiff shall file the short declaration
25 described above within ten days of the date of this order;
26 \\\\\

2. Plaintiff is limited to one pending motion at any one time; plaintiff may not file further motions until the Honorable Garland E. Burrell either adopts or rejects these findings and recommendations;

IT IS HEREBY RECOMMENDED that plaintiff's motions for injunctive relief filed June 16, 2008 (# 91), and June 25, 2008 (# 92) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within <u>ten</u> days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: 07/22/08

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

an29.pi(2)