IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD ANAYA,

    Plaintiff,                  No. CIV S-07-0029 GEB GGH P

    vs.

ROSEANNE CAMPBELL, et al.,

    Defendants.            FINDINGS & RECOMMENDATIONS

_____/

I. Introduction

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is the motion for judgment on the pleadings and to dismiss filed August 17, 2009, pursuant to Fed. R. Civ. P. 12(b) and 12(c) on behalf of defendants Smith, Casperite, Hamilton, Felker, Subia, Hoepner, Perez, James, Hale, Clark, Tedder, Akintola, Williams, Agyeman, Nale, Campbell, Huerta-Garcia, Johnson and Grannis.[1]

        For the following reasons, the court recommends that defendants' motion be granted in part and denied in part.

/////

---

[1] Defendant Cullen is represented by different counsel and has separately filed a summary judgment motion.

II. Failure to Exhaust Administrative Remedies

Pursuant to Fed. R. Civ. P. 12(b), defendants move to dismiss the claims against all defendants but for Smith and Williams on grounds that plaintiff failed to exhaust administrative remedies. For the following reasons, the court finds that this motion is untimely brought.

*Background*

Plaintiff filed the original complaint in this action on January 5, 2007, alleging violations of his civil rights and the Americans with Disabilities Act (ADA) at Mule Creek State Prison (MCSP), where he was housed. Plaintiff alleged that he had been denied adequate medical care for knee problems and a rectal prolapse. Plaintiff alleged that he had been denied knee surgery, a walking cane, grab bars, crutches, a single cell due, cell meals and a raised toilet seat. Plaintiff also alleged that defendants were improperly requiring him to use public restrooms. Plaintiff also claimed that he had not been given an adequate job assignment. On April 11, 2007, the court ordered service of defendants Smith, Grannis, Tedder, Nale, Campbell, Akintola, Garcia, Johnson, Reaves, Reyes and Kinnick.[2]

On August 23, 2007, defendants first appeared in this action by filing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). On December 5, 2007, the court recommended that defendants' motion be denied as to the claims against Smith. The court ordered the motion granted with leave to amend as to the claims against the other defendants.

On November 21, 2007, plaintiff filed a notice of change of address indicating his transfer to High Desert State Prison (HDSP).

On May 29, 2008, plaintiff filed an amended complaint consisting of two separately filed documents, court file nos. 86 and 88. The amended complaint names Grannis, Tedder, Nale, Campbell, Akintola, Garcia and Johnson as defendants. Newly named as

---

[2] The court also ordered service of named defendants Cate and Azcona. These individuals are no longer defendants in this action.

defendants were Subia, Hamilton, Casperite, Hoepner, Williams, Cullen, Felker, Perez, Hale, James, Agyeman and Clark. The amended complaint included allegations regarding conditions at MCSP and HDSP. The claims against the newly named defendants at HDSP were similar to those raised against the defendants located at MCSP.

On June 26, 2008, the court ordered the original defendants to answer the amended complaint and ordered service of the new defendants. On August 26, 2008, the original defendants filed an answer to the amended complaint. On November 4, 2008, newly named defendants Casperite, Felker, Hamilton, Hoepner, James, Perez and Subia filed an answer to the amended complaint.

On November 10, 2008, the court issued a scheduling order setting the dispositive motion cut-off date for June 19, 2009. On January 22, 2009, newly named defendants Hale, Clark, Agyeman and Williams filed an answer to the amended complaint.

On February 27, 2009, defendants filed a motion to modify the scheduling order. Defendants requested that the court extend the discovery cut-off and dispositive motion filing dates because new defense counsel had been assigned. On March 13, 2009, the court granted this motion, and re-set the dispositive motion cut-off date to August 19, 2009.

On August 17, 2009, defendants filed the pending motion to dismiss and for judgment on the pleadings.

*Analysis*

42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Defendants' motion for failure to exhaust administrative remedies is brought pursuant to Fed. R. Civ. P.12(b).

\\\\\

Under Fed. R. Civ. P. 12(b), as to the specifically enumerated grounds 1 through 7, the rule announces that "[a] motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." This court finds that although this motion is one that is brought under the nonenumerated grounds of Rule 12(b), that, similarly, such a motion, generally, is timely when it, too, is brought prior to the filing of an answer.  This is so because defendants have ready access to the CDCR records, or lack thereof, to support the motion and, if they do not, they have the means to seek an extension of time before filing an answer from the court to be permitted to gather the requisite information.

Moreover, the MCSP defendants appeared in this action two years ago. Since that time, the MCSP defendants have filed a motion to dismiss for failure to state a claim pursuant to Fed. R Civ. P. 12(b)(6) and an answer. The court has spent considerable resources on this action since that time.

Seven of the newly named HDSP defendants filed their answer nine months before the pending motion was filed. The other three newly named HDSP defendants on whose behalf the pending motion is brought filed their answer seven months before this motion was filed. Since the filing of the answers, considerable court time and resources have been spent on this action. For example, on March 24, 2009, and August 3, 2009, the court issued orders denying three motions to compel filed by plaintiff. Had defendants timely filed their motion to dismiss, the court most likely would not have had to devote the extensive time and resources it did to evaluating these motions.

This court has not been able to uncover any binding and conclusive authority on the issuance of the timeliness, or lack thereof, of a nonenumerated 12(b) motion; however, the undersigned finds that the reasoning set forth in a federal court in the Central District of California, where the district judge found defendant's motion to dismiss for nonexhaustion of administrative remedies, filed some ten months after the filing of the answer, untimely, best encapsulates the position of the undersigned:

> Moving Defendant cites no case law which indicates that the issue of exhaustion of administrative remedies may only be raised through a motion for summary judgment. On the contrary, the Ninth Circuit has repeatedly found that "failure to exhaust nonjudicial remedies is a matter in abatement, not going to the merits of the claim, and as such is not properly raised in a motion for summary judgment." *Ritza v. International Longshoremen's And Warehousemen's Union, et al.*, 837 F.2d 365, 368 (9th Cir.1988) (citation omitted); *Inlandboatmens Union of the Pacific v. Dutra Group*, 279 F.3d 1075, 1083 (9th Cir.2002) ("We have held that a failure to exhaust non-judicial remedies must be raised in a motion to dismiss, and should be treated as such even if raised as part of a motion for summary judgment.")
>
> Under previously existing Ninth Circuit case law, Moving Defendant should have brought his challenge to Plaintiff's claims based on failure to exhaust administrative remedies *through a timely motion to dismiss* rather than a motion for summary judgment.
>
> The Ninth Circuit allows a Rule 12(b) motion *any time before the responsive pleading is filed*. See *Aetna Life Ins. Co. v. Alla Medical Services, Inc.*, 855 F.2d 1470, 1474 (9th Cir.1988) (citing *Bechtel v. Liberty Nat'l Bank*, 534 F.2d 1335, 1340-41 (9th Cir.1976) (In *Bechtel*, the Ninth Circuit noted that "while some courts hold that Rule 12(b) motions must be made within 20 days of service of the complaint, the rule itself only requires that such motions 'be made before pleading if a further pleading is permitted.'")

Thomas v. Baca, 2003 WL 504755, *2 (C.D. Cal. 2003) [emphasis added].

While, of course, defendants have not brought this motion technically within a motion for summary judgment, but, instead have brought it two days before the dispositive motion cut-off date, the reasoning is no less apposite. The undersigned is aware of conflicting decisions at the district court level within this circuit, see, e.g., Rigsby v. Schriro, 2008 WL 2705376, *1 n. 2 (D. Ariz. 2008) (finding that, where defendant simultaneously filed an answer – asserting the failure to exhaust defense – and an unenumerated motion to dismiss for failure to exhaust administrative remedies, such a motion "need not be made before answering"); Tyner v. Schriro, 2008 WL 752612, *1 n. 1 (D. Ariz. 2008) (same); see also, Thrasher v. Garland, 2007 WL 3012615 *2 (W.D. Wash. 2007) (asserting that, although a motion to dismiss pursuant to the specifically enumerated grounds of Rule 12(b) should be brought before the answer is filed, a

nonenumerated 12(b) motion "need not necessarily be brought prior to the filing of the answer."

However, this court finds the reasoning of Thomas v. Baca, supra, to better promote judicial efficiency and economy while at the same time limiting unfair prejudice to a pro se prisoner plaintiff. As noted, the state attorney general has virtually unlimited access to CDCR records. Defendants' counsel makes no effort whatever to explain why such a motion could not have been brought prior to the filing of the answer on behalf of these defendants, and prior to the time when this court had expended resources adjudicating discovery disputes and several motions for injunctive relief as well as other matters. Nor is the question of exhaustion, or lack thereof, of administrative remedies a jurisdictional one. Wyatt v. Terhune, 315 F.3d 1108, 1119 n. 13 ("PLRA exhaustion is not a jurisdictional requirement.") Accordingly, the undersigned will not reach the merits of defendants' 12(b) motion as this court finds the motion to be untimely.

III.   Motion for Judgment on the Pleadings

A.   Legal Standard

Judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. Honey v. Distelrath, 195 F.3d 531, 532-33 (9th Cir.1999) (citing Nelson v. City of Irvine, 143 F.3d 1196, 1200 (9th Cir.1998)). The court must assume the truthfulness of the material facts alleged in the complaint. All inferences reasonably drawn from these facts must be construed in favor of the responding party. Westlands Water Dist. v. Firebaugh Canal, 10 F.3d 667, 670 (9th Cir.1993); see also General Conference Corp. of Seventh-Day Adventists v. Seventh Day Adventist Congregation Church, 887 F.2d 228, 230 (9th Cir.1989). In addition, all allegations of fact by the party opposing the motion are accepted as true, and are construed in the light most favorable to that party. McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir.1988). Allegations of the moving party which have been denied are assumed to be false. Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1550 (9th Cir.1990).

B. <u>Plaintiff's Claims</u>

To put defendants' motion in context, the court will summarize plaintiff's claims. The amended complaint contains two separate documents, court file nos. 86 and 88. No. 88 contains the factual allegations.

Plaintiff alleges that defendants Grannis and Tedder improperly denied his administrative appeals requesting grab bars, walking crutches, a commode chair, appropriate job placement, and single cell status. Plaintiff also alleges that defendants denied an appeal seeking a follow-up medical appointment.

Plaintiff alleges that defendants Campbell, Subia, Felker, Garcia and Perez are the Wardens of the MCSP and HDSP. Plaintiff alleges that defendants Campbell and Garcia denied his appeal requesting crutches and a grab bar rail for his cell and work, as well as a request for a different job. Plaintiff alleges that because defendants denied his appeal, he received a rules violation report because he could not stay in class for more than three hours.

Plaintiff alleges that due to his medical problems, he was placed on a waiting list for a porter job. Plaintiff alleges that defendants Garcia and Subia later reversed the decision to place him on the waiting list.

Plaintiff alleges that defendants Felker and Perez refused to grant him single cell status when he arrived at HDSP. Plaintiff alleges that the "HDSP" defendants told plaintiff that he would have to beat up his cellmates before they would grant him single cell status. Plaintiff alleges that he had three physical altercations with cellmates. Plaintiff also alleges that he suffered a hernia as a result of having to rush off the toilet without a grab bar.

Plaintiff alleges that defendants Johnson, Hamilton, Casperite and Hoepner were responsible for plaintiff's job assignment. Plaintiff alleges that defendants assigned plaintiff to jobs and educational assignments that he could not participate in due to his medical problems. Plaintiff alleges that these defendants wrongly denied his request to be transferred to a prison that could handle his medical needs.

Plaintiff alleges that defendants Williams, Smith, Nale and Akintola provided inadequate medical care while he was housed at MCSP. Plaintiff alleges that defendant Smith improperly discontinued plaintiff's single cell status and denied him use of canes, crutches and cell feeds. Plaintiff alleges that defendant Smith acted in retaliation for plaintiff rejecting his homosexual fondling during a medical exam. Plaintiff also alleges that he began filing administrative grievances against defendant Smith who then "totally discriminated the plaintiff's medical care."

Plaintiff alleges that defendant Williams disregarded a recommendation by outside doctor Vidovszoky that plaintiff have GI surgery in three months. Plaintiff alleges that because he did not receive the surgery, his rectal prolapse conditioned worsened so that plaintiff is now permanently disabled.

Plaintiff alleges that defendant Nale denied plaintiff's request for two day medical lay-ins and for crutches. Plaintiff also alleges that defendant Nale denied his request for a transfer to a prison that could accommodate his medical needs.

Plaintiff alleges that defendant Akintola denied his request for medical lay-ins.

Plaintiff alleges that defendants Agyeman, James and Clark provided him with inadequate medical care while he was housed at HDSP. Plaintiff alleges that defendant Clark gave him medication that his medical records stated made him sick. Plaintiff alleges that on February 29, 2008, defendant Clark refused to renew his pain medication.

Plaintiff alleges that defendant James ordered that plaintiff receive pain medication, but he did not receive it until seven days later. Plaintiff alleges that defendant James agreed that plaintiff should have a grab bar, knee brace, crutches, mobility vest, waist chains and a wheel chair. However, due to overcrowding, he could not approve a single cell for plaintiff.

C. ADA

Defendants argue that plaintiff does not have an ADA claim as a matter of law. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of

such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by such entity." 42 U.S.C. § 12132. Title II applies to inmates within state prisons. Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir.1997).

"To establish a violation of Title II of the ADA, a plaintiff must show that (1)[he] is a qualified individual with a disability; (2)[he] was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of [his] disability." Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002).

Defendants argue that plaintiff's ADA claim must be dismissed because he has not named a proper defendant. "The ADA defines 'public entity' in relevant part as 'any State or local government' or 'any department, agency, special purpose district, or other instrumentality of a State or States or local government.'" 42 U.S.C. § 12131(1)(A)-(B). Public entity, "'as it is defined within the statute, does not include individuals.'" Roundtree v. Adams, 2005 WL 3284405 at * 8 (E.D. Cal. Dec. 1, 2005)(quoting Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n. 8 (8th Cir.1999)). Thus, individual liability is precluded under Title II of the Americans with Disabilities Act.

Named as defendants are Roseanne Campbell, Warden at Mule Creek State Prison, and Warden Felker, Warden at H.D.S.P. Because plaintiff sought injunctive relief, defendants Campbell and Felker are sued in their official capacities. Claims against state officials in their official capacities are construed as claims against the state. See Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099 (1985); Miranda B. V. Kitzhaber, 328 F.3d 1181, 1187-88 (9th Cir. 2003). For this reason, the undersigned finds that plaintiff has named the proper defendants for his ADA claim.

Defendants also argue that the amended complaint fails to allege any facts demonstrating that plaintiff was excluded from, or denied the benefits of any services, programs

or activities because of his alleged disabilities. In the amended complaint, plaintiff alleges that because defendants refused to comply with the "(ADA) recommendation" he was "excluded from participating in a job..." Amended Complaint, court file document 86, p. 2. Plaintiff alleges that defendants Campbell and Garcia denied him "grab bars, crutches and a alternative job work placement that would accommodate" his medical condition. Id., p. 4. Plaintiff also alleges that he was placed on a waiting list for a porter job only "because there is no (ADA) grab bars in M.C.S.P. Education building..." Id., p. 5. Plaintiff alleges that defendants deprived plaintiff of "(ADA) accommodations such as grab bar, walking cane and or crutches in order for the plaintiff to maintain an appropriate education and to be able to attend a job work function..." Id., p. 6.

Plaintiff is claiming that he could not participate in work and education programs because defendants failed to provide him with grab bars, crutches and canes. These allegations state a colorable ADA claim. Accordingly, defendants' motion to dismiss plaintiff's ADA claim should be denied.

### D. Inadequate Medical Care

*Legal Standard*

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications

that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S. Ct. at 1981. However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth

11

1  Amendment violation.  Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon,
2  662 F.2d 1337, 1344 (9th Cir. 1981).
3        Moreover, a physician need not fail to treat an inmate altogether in order to violate
4  that inmate's Eighth Amendment rights.  Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir.
5  1989).  A failure to competently treat a serious medical condition, even if some treatment is
6  prescribed, may constitute deliberate indifference in a particular case.  Id.
7        Additionally, mere delay in medical treatment without more is insufficient to state
8  a claim of deliberate medical indifference.  Shapley v. Nevada Bd. of State Prison Com'rs, 766
9  F.2d 404, 408 (9th Cir. 1985).  Although the delay in medical treatment must be harmful, there is
10 no requirement that the delay cause "substantial" harm.  McGuckin, 974 F.2d at 1060, citing
11 Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-
12 1000.  A finding that an inmate was seriously harmed by the defendant's action or inaction tends
13 to provide additional support for a claim of deliberate indifference; however, it does not end the
14 inquiry.  McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992).  In summary, "the more serious the
15 medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those
16 needs, the more likely it is that a plaintiff has established deliberate indifference on the part of
17 the defendant."  McGuckin, 974 F.2d at 1061.
18     *Analysis*
19       Plaintiff alleges that all defendants violated the Eighth Amendment by failing to
20 provide him with adequate medical care.  In their motion, defendants only specifically address
21 claims made against defendants Williams, Smith, Nale and Akintola.  As for defendants
22 Campbell, Casperite, Hamilton, Hoepner, Grannis, Huerta-Garcia, Johnson, Subia and Tedder,
23 defendants generally argue that plaintiff does not allege that they failed to provide medical care.
24 Defendants do not otherwise analyze the claims against these defendants.  Defendants do not
25 mention the Eighth Amendment claims against defendants Felker, Perez, Hale, James, Agyeman
26 and Clark.

1        This is defendants' motion.  It is their burden to inform the court and plaintiff as
2   to why they believe the amended complaint does not state colorable claims for relief.  It is not the
3   court's job to analyze plaintiff's claims on defendants' behalf.  For that reason, the court finds
4   that defendants have not made an adequate showing that plaintiff has failed to state Eighth
5   Amendment claims as to all defendants but for Williams, Smith, Nale and Akintola.
6        Plaintiff alleges that on November 17, 2003, defendant Smith discontinued
7   plaintiff's single cell status, his use of crutches, walking canes and cell feeds in retaliation for
8   plaintiff refusing to allow him to inappropriately touch him during a medical examination.
9   Plaintiff is alleging that he had a medical need for single cell status, crutches, walking canes and
10  cell feeds, and that defendant Smith discontinued these conditions for reasons unrelated to
11  plaintiff's medical needs.  These allegations state a colorable Eighth Amendment claim against
12  defendant Smith.
13       Plaintiff alleges that defendant Williams disregarded a recommendation by
14  outside doctor Vidovszoky that plaintiff have GI surgery in three months.  Plaintiff alleges that
15  21 months after this recommendation, he had still not received the surgery.  Plaintiff alleges that
16  as a result of this delay, he suffered a permanent injury caused by straining to urinate and
17  prolapsing.  Plaintiff also alleges that because of this delay, surgery is no longer an option.
18       Defendants argue that plaintiff's failure to identify the alleged permanent injury
19  demonstrates that he has not stated a colorable claim. The court disagrees.  Plaintiff alleges that
20  as a result of a delay in medical care caused by defendant Williams, he suffered further injury
21  caused by straining and prolapsing.  These allegations state a colorable Eighth Amendment claim
22  against defendant Williams.
23       Plaintiff alleges that he asked defendant Nale for a medical lay-in due to acute
24  back pain.  Plaintiff also asked for crutches and a grab bar at work.  Plaintiff alleges that he told
25  defendant Nale that it was difficult to function for eight hours due to his medical problems,
26  including incontinence, not being able to change his clothing and to wash.  Plaintiff alleges that

defendant Nale denied these requests, as well as a request for a transfer to a prison that could accommodate plaintiff's medical problems.

Defendants argue that the allegations against defendant Nale are not colorable because plaintiff fails to allege that defendant Nale failed to provide him with *treatment*. A medical lay-in constitutes treatment under the Eighth Amendment. Plaintiff also suggests that plaintiff's request for a medical lay-in was sought in order to be more comfortable, rather than for a true medical need. Plaintiff alleges that he requested that lay-in due to severe back pain. Plaintiff also alleges that he suffered from incontinence, which made using public restrooms difficult. His allegations clearly suggest that he suffered issues related to sanitation as a result of using public restrooms. These allegations do not suggest that plaintiff sought the medical lay-in merely to be more comfortable. Plaintiff has stated a colorable Eighth Amendment claim against defendant Nale.

Plaintiff alleges that he asked defendant Akintola for a medical lay-in due to acute back pain. Plaintiff also requested that he be assigned to a job that could accommodate his medical problems. Plaintiff alleges that defendant Akintola denied these requests, telling plaintiff to take some ibuprophen instead. Plaintiff alleges that the next day at work, he suffered a serious back injury as he tried to make a grab bar out of a garbage can to pull himself up. These allegations state a colorable claim for relief against defendant Akintola.

For the reasons discussed above, the motion for judgment on the pleadings as to plaintiff's Eighth Amendment claims should be denied.

E.  Eleventh Amendment

Defendants argue that to the extent plaintiff is suing them in their official capacity, the amended complaint should be dismissed because it violates the Eleventh Amendment.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities." Aholelei v. Dept. of Public

1 Safety, 488 F.3d 1144, 1147 (9th Cir.2007) (citations omitted).  However, the Eleventh
2 Amendment does not bar suits seeking damages against state officials in their personal
3 capacities.  Hafer v. Melo, 502 U.S. 21, 30, 112 S.Ct. 358 (1991); Porter v. Jones, 319 F.3d 483,
4 491 (9th Cir.2003).
5         Plaintiff seeks money damages against defendants in their personal capacities.  He
6 seeks injunctive relief against defendants in their official capacities.  Plaintiff's claims for relief
7 do not violate the Eleventh Amendment.  Accordingly, the motion for judgment on the pleadings
8 on this ground should be denied.
9         F.  Retaliation
10         In order to succeed on a claim of retaliation, plaintiff must demonstrate five
11 elements: 1) an asserted that a state actor took some adverse action against him, 2) because of, 3)
12 the prisoner's protected conduct, and that such action, 4) chilled the inmate's exercise of his First
13 Amendment rights; and 5) the action did not reasonably advance legitimate correctional goals.
14 Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005).  If the prisoner does not allege a chilling
15 effect, allegations that he suffered more than minimal harm will almost always have a chilling
16 affect, id., n. 11, which is judged on a reasonable person basis.  Brodheim v. Cry, __ F.3d __, No.
17 07-17081 (9th Cir. 2009) at 14557.
18         As discussed above, plaintiff alleges that defendant Smith denied him appropriate
19 medical care in retaliation for plaintiff rejecting his homosexual fondling during a medical exam.
20 Plaintiff also alleges that defendant Smith denied him medical care after plaintiff began filing
21 administrative grievances against him.
22         Defendants first argue that plaintiff has not stated a colorable retaliation claim
23 against defendant Smith because plaintiff's reaction to defendant Smith is not protected by the
24 First Amendment.  Plaintiff is claiming that he exercised his constitutional right to tell defendant
25 Smith "No."  While the court finds plaintiff's claim doubtful, it is clear that his refusal of a
26 sexual advance is protected conducted.

In addition, it appears from the amended complaint that plaintiff is alleging that defendant Smith denied him single cell status, etc. after plaintiff filed grievances against him regarding making the sexual advance. Plaintiff clearly has a First Amendment right to file administrative grievances.

Defendants also argue that plaintiff has alleged no harm as a result of the alleged retaliation by defendant Smith. Plaintiff is alleging that defendant Smith denied him single cell status, etc. for rejecting his sexual advance. The denial of single cell status, etc. is the harm caused by defendant Smith's alleged retaliation.

For the reasons discussed above, the court recommends that the motion for judgment on the pleadings as to the retaliation claim against defendant Smith be denied.

G.  Claims Against Defendants Campbell, Grannis and Tedder

Defendants argue that the claims against defendants Campbell, Grannis and Tedder do not state colorable claims for relief. As discussed above, plaintiff alleges that defendants Grannis and Tedder improperly denied his administrative appeals requesting grab bars, walking crutches, a commode chair, appropriate job placement and single cell status. Plaintiff alleges that defendant Campbell denied his administrative appeal requesting crutches, grab bars and a request for a different job.

Defendants argue that the only allegations against these defendants involved their denial of his administrative grievances. Defendants argue that these allegations do not state colorable claims against these defendants.

Defendants sued in their individual capacity must be alleged to have: personally participated in the alleged deprivation of constitutional rights; known of the violations and failed to act to prevent them; or implemented a policy that repudiates constitutional rights and was the moving force behind the alleged violations. Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991); Hansen v. Black, 885 F.2d 642 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040 (9th Cir. 1989). "Although a § 1983 claim has been described as 'a species of tort liability,' Imbler v.

Pachtman, 424 U.S. 409, 417, 96 S. Ct. 984, 988, 47 L.Ed.2d 128, it is perfectly clear that not every injury in which a state official has played some part is actionable under that statute." Martinez v. State of California, 444 U.S. 277, 285, 100 S. Ct. 553, 559 (1980). "Without proximate cause, there is no § 1983 liability." Van Ort v. Estate of Stanewich, 92 F.3d 831, 837 (9th Cir. 1996).

> The search, which was performed in accordance with this constitutionally valid strip search policy, was subsequently ratified by the School Board when Mr. Williams filed a grievance. Therefore, Williams' only grasp at evoking municipal liability under § 1983 is to show that this subsequent ratification is sufficient to establish the necessary causation requirements. Based on the facts, the Board believed Ellington and his colleagues were justified in conducting the search of Williams. There was no history that the policy had been repeatedly or even sporadically misapplied by school board officials in the past. Consequently, the School Board cannot be held liable for the ratification of the search in question, because this single, isolated decision can hardly constitute the "moving force" behind the alleged constitutional deprivation.

Williams v. Ellington, 936 F.2d 881, 884-885 (9th Cir. 1991).

This court is unwilling to adopt a rule that anyone involved in adjudicating grievances after the fact is per se potentially liable under a ratification theory. However, this is not to say that persons involved in adjudicating administrative disputes, or persons to whom complaints are sometimes made, can never be liable under a ratification theory. If, for example, a reviewing official's rejections of administrative grievances can be construed as an automatic whitewash, which may have led other prison officials to have no concern of ever being reprimanded, a ratifying official may be liable for having put a defective policy in place.

The amended complaint contains no allegations suggesting that in denying plaintiff's grievances, defendants Grannis, Tedder or Campbell were involved in a whitewash that led the other defendants to have no concern for plaintiff's medical problems. For that reason, the court finds that plaintiff has not stated a colorable Eighth Amendment claim against these defendants. The motion for judgment on the pleadings as to defendants Grannis, Tedder and Campbell should be granted.

\\\\\

### H. State Law Claims

Defendants state that plaintiff has alleged state law claims against defendants Smith, Williams, Akintola and Nale. Defendants argue that if the federal claims against these defendants are dismissed, the state law claims should be dismissed against them as well. Because the court recommends that the motion for judgment on the pleadings as to the constitutional claims be denied, defendants' motion to dismiss the state law claims should be denied as well.[3]

Accordingly, IT IS HEREBY RECOMMENDED that defendants' August 17, 2009, motion for judgment on the pleadings (no. 192) be granted as to the claims against defendants Grannis, Tedder and Campbell; the motion should be denied in all other respects.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 11/09/09

/s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

an29.sj

---

[3] Even if the court dismissed the constitutional claims against these defendants, it may well have had supplemental jurisdiction over the state law claims against them if constitutional claims remained against the other defendants.