IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RICHARD ERNEST ANAYA,

Plaintiff, No. CIV S-07-0029 GEB GGH P

vs.

ROSEANNE CAMPBELL, et al.,

Defendants. FINDINGS & RECOMMENDATIONS

_______________________________/

I. Introduction

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he received inadequate medical care in violation of the Eighth Amendment. Plaintiff also alleges several state law violations. Pending before the court is defendant Cullen's motion for summary judgment filed August 17, 2009.[1] For the following reasons, the court recommends that defendant's motion be granted.

II. Summary Judgment Standards Under Fed. R. Civ. P. 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

[1] The other defendants are represented by separate counsel.

matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
>
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On June 5, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir.

1988).

III. Eighth Amendment Claim

A. Legal Standard for Eighth Amendment Inadequate Medical Care Claim

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference." Of course, negligence is insufficient. Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient. Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant

should have known of the risk. Id. at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S. Ct. at 1981. However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the

inquiry. McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." McGuckin, 974 F.2d at 1061.

Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988). Thus, although there may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the treatment he received equated with deliberate indifference thereby creating a material issue of fact, summary judgment should be entered for defendants. The dispositive question on this summary judgment motion is ultimately not what was the most appropriate course of treatment for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence, criminally reckless.

B. Undisputed Facts

In determining the undisputed facts, the court has reviewed the entire record. For that reason, the undisputed facts include facts not stated in either plaintiff or defendant's statements of undisputed facts.

In 2005 Dr. Williams at Mule Creek State Prison (MCSP) requested a consultation on plaintiff's behalf by Dr. Tanji, the Associate Director of the UC Davis Department of Sports Medicine. In December 2005, Dr. Jeffrey Tanji examined plaintiff in the Orthopedic Telemedicine Clinic.[2] Plaintiff told Dr. Tanji that he underwent ACL (anterior cruciate ligament) reconstruction in June 2005. Plaintiff told Dr. Tanji that he initially did well after surgery but felt mechanical symptoms and that his knee was lax. In his report following the

[2] Because it is a *Tele*medicine Clinic, it is unclear whether plaintiff was physically present with Dr. Tanji for the consultation.

consultation, Dr. Tanji wrote that plaintiff underwent a repeat MRI postoperatively at Doctor's Hospital in Manteca which demonstrated a large bucket handle tear of the meniscus. Dr. Tanji wrote that plaintiff's graft appeared intact and that, at this stage, plaintiff had swelling and mechanical symptoms and laxity to the knee.

In the section of the report titled "Physical Examination" Dr. Tanji wrote,

> Right knee reveals laxity to Lachman with no endpoint. Medial joint line pain. The knee is stable to varus and valgus testing. McMurry test is markedly positive. The MRI results are reviewed together demonstrating the findings as described above.

Dr. Tanji assessed plaintiff as suffering from chronic laxity of the right ACL, status post ACL reconstruction with bucket handle tear of the meniscus. He concluded that plaintiff was a good candidate for a repeat arthroscopy to resolve the bucket handle tear to the meniscus.

In February 2006 plaintiff was referred from MCSP to the UC Davis Sports Medicine Clinic for problems with his right knee. On July 24, 2006, plaintiff was seen at the Clinic by defendant Cullen for evaluation of his right knee. At that time, defendant Cullen was a resident physician working in the clinic. Plaintiff told defendant Cullen that he had previously had an ACL tear in his right knee surgically reconstructed in 2005. Plaintiff told defendant that he injured his knee shortly after surgery and that his knee now felt unstable and lax. Plaintiff told defendant that an MRI had been taken of his knee at an outside hospital which showed a bucket tear in the meniscus of his right knee. Plaintiff did not bring a copy of the MRI to his appointment with defendant Cullen.

After obtaining a history from plaintiff regarding his knee problems, defendant performed an examination of his knee which included 1) extension and flexion testing; 2) the Lachman test (used for examining the ACL); 3) testing for varus or valgus instability; 4) testing for joint effusion; 5) a meniscal test; 6) testing for tenderness in various areas on and around plaintiff's right knee; and 7) checking for locking in plaintiff's knee.

Defendant's examination of plaintiff's right knee revealed 1) extension to around 15 degrees and flexion to be around 140 degrees; 2) a 3+ Lachman test; 3) no varus or valgus instability; 4) 1+ effusion; 5) a negative spring test; 6) plaintiff had no tenderness to palpatation over his medial and lateral joint lines, as well as his patella and pattelar tendon; and 7) plaintiff had no tenderness to palpatation in the posterior knee. Defendant's examination of the knee did not reveal that plaintiff's knee was locking.

After performing his examination, defendant Cullen determined that plaintiff's knee had instability and slightly decreased extension, which would likely need to be surgically repaired sometime in the future when the symptoms worsened. Defendant Cullen also determined that nothing indicated that plaintiff had a mensical tear or any other condition requiring immediate surgery. Defendant Cullen conveyed his examination findings to his supervising attending physician covering plaintiff. After hearing these findings, the supervising attending physician made the decision to defer surgery on plaintiff's knee until his symptoms increased. The supervising physician recommended that plaintiff undertake physical therapy to strengthen the muscles and ligaments around his knee. Completing physical therapy on the right knee prior to surgery would help plaintiff's post-operative recovery and increase his chances of having a successful result from that surgery.

Following the failure of non-operative treatment, plaintiff underwent surgery on his right knee (ACL reconstruction) on September 26, 2007, which revealed that plaintiff's meniscus was substantially intact and not torn.

C. <u>Discussion</u>

Plaintiff alleges that defendant Cullen acted with deliberate indifference to his serious medical needs when he failed to recommend immediate surgery for his knee following the July 2006 examination. Plaintiff also alleges that the examination was not competently performed. In his opposition, plaintiff also claims that defendant Cullen failed to inform MCSP that he required physical therapy. Defendant argues that he is entitled to summary judgment as to

plaintiff's Eighth Amendment claims because he did not act with deliberate indifference to plaintiff's serious medical needs.

The court first considers the claim that defendant Cullen failed to recommend immediate knee surgery. Defendant argues that he did not make the decision to defer plaintiff's knee surgery. Defendant contends that the decision was made by his supervising physician. In his opposition, plaintiff includes a form prepared by defendant Cullen following his examination of plaintiff which includes a diagnosis and treatment plan for plaintiff. This document is signed by defendant Cullen.

While defendant Cullen's supervisor may have made the ultimate decision regarding plaintiff's need for surgery, it was based on information provided to him by defendant Cullen. Because the supervisor did not examine plaintiff, the court finds it highly unlikely that defendant Cullen made no recommendation to his supervisor regarding plaintiff's treatment plan. Defendant's suggestion that he merely reported his findings to his supervisor, who then decided what treatment plaintiff should receive, appears disingenuous. The lack of a declaration by defendant's supervisor explaining how treatment decisions are made following an examination by a resident physician supports the court's finding as does the form attached to plaintiff's opposition containing defendant's signature and describing the proposed treatment plan. Accordingly, because defendant has not made an adequate showing that he did not participate in the formulation of plaintiff's treatment plan, defendant is not entitled to summary judgment on this ground.

Defendant next moves for summary judgment on grounds that the decision to defer knee surgery did not amount to deliberate indifference. As discussed above, after examining plaintiff, defendant determined that plaintiff had no meniscal tear or any other condition necessitating immediate knee surgery. Based on his examination, he determined that deferring surgery and undertaking physical therapy was appropriate, if not the optimal course, for maximizing plaintiff's post-operative recovery and increasing his chances of a successful

surgery.

In opposition, plaintiff argues that defendant acted with deliberate indifference by not ordering immediate surgery. Plaintiff relies on Dr. Tanji's report, which recommended surgery to repair a torn meniscus based on an MRI report stating that he had a torn meniscus.

Dr. Tanji recommended that plaintiff have surgery to repair a bucket handle tear to plaintiff's meniscus. When defendant Cullen examined plaintiff, he determined that plaintiff did not have a torn meniscus. Plaintiff's knee surgery in 2007 did not find a torn meniscus. Because plaintiff did not have a torn meniscus, Dr. Tanji's recommendation for surgery to repair it was ultimately incorrect, despite reliance on the MRI findings.

The court observes that attached as an exhibit to plaintiff's May 29, 2008, motion for a preliminary hearing (court file doc. 89) is the radiology report of an MRI done on plaintiff's right knee on August 16, 2005, at Doctors Hospital of Manteca. Court file doc. 89, p. 15 of 54. This report appears to be the report relied on by Dr. Tanji. It states, in relevant part,

> MENISCI: The posterior horn of the lateral meniscus has an abnormal configuration which raises the possibility of a displaced bucket-handle type tear. Some high signal abnormality within the anterior horn of the lateral meniscus may be due to intrasubstance degeneration. The posterior horn and body of the medical meniscus also appears slightly attenuated with some blunting of the free edge of the posterior horn medial meniscus which raises the possibility of a mild bucket handle type injury.
>
> High signal abnormality within the posterior horn of the medial meniscus may be due to extensive intrasubstance degeneration. No definite meniscal cysts are seen.

The report concluded, "Findings suspicious for displaced bucket handle type tear mostly involving the posterior horn lateral meniscus. Questions of a significantly lesser bucket handle type tear involving the body and free edge of the medial meniscus." Id. at 16 of 54. In other words, the MRI report found only the *possibility* of a bucket handle menisus tear. Dr. Tanji's statement that the MRI report stated that plaintiff actually had a meniscal tear, on which he based his surgery recommendation, is not supported by the report.

\\\\\

Plaintiff has presented no other expert evidence countering defendant Cullen's expert opinion that plaintiff had no other condition requiring immediate surgery. Nor has plaintiff presented any expert evidence countering defendant Cullen's expert opinion that deferring surgery and undertaking physical therapy was appropriate, if not the optimal course, for maximizing plaintiff's post-operative recovery and increasing his chances of a successful surgery. Plaintiff's own opinion that defendant's examination of him was not adequate cannot be credited as plaintiff is not a medical expert.[3]

As discussed above, in his opposition plaintiff argues that defendant Cullen failed to inform him and the prison staff that he would require physical therapy. The operative amended complaint (court file docs. 86, 88) contains no claim by plaintiff that defendant Cullen caused him not to receive physical therapy by failing to communicate this recommendation to prison officials. Plaintiff cannot amend his complaint by way of his opposition to defendant's summary judgment motion to include this new claim. In any event, other than his own conclusory assertion, plaintiff provides no evidence supporting this claim.

For the reasons discussed above, the court recommends that defendant be granted summary judgment as to plaintiff's Eighth Amendment claim.

Defendant also moves for summary judgment as to the Eighth Amendment claim on grounds that he is entitled to qualified immunity.

In resolving a claim for qualified immunity the court addresses two questions: (1) whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the officer's actions violated a constitutional right and (2) whether a reasonable officer could have believed that his conduct was lawful, in light of clearly established law and the information the officer possessed. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987). Although the

---

[3] Defendant argues that Dr. Tanji's surgery recommendation should be rejected because he is not an orthopedic surgeon. Defendant also argues that Dr. Tanji did not recommend *immediate* surgery. Because Dr. Tanji's diagnosis of a torn meniscus was not supported by the surgical evaluation, the court need not reach these arguments.

Supreme Court at one time mandated that lower courts consider these two questions in the order just presented, more recently the Supreme Court announced that it is within the lower courts' discretion to address these questions in the order that makes the most sense given the circumstances of the case. Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, --- L.Ed.2d ----, 2009 WL 128768 (January 21, 2009).

Because the court finds that defendant did not violate plaintiff's constitutional rights, it need not address the remaining elements of qualified immunity.

IV. State Law Claims

Plaintiff alleges that defendant Cullen committed medical malpractice in his treatment of his knee.

"[I]n any medical malpractice action, the plaintiff must establish: '(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Hanson v. Grode, 76 Cal.App.4th 601, 606, 90 Cal.Rptr.2d 396, 400 (1999) (quoting Gami v. Mullikin Medical Center, 18 Cal.App.4th 870, 877, 22 Cal.Rptr.2d 819 (1993).)

Defendant moves for summary judgment as to plaintiff's malpractice claim on the same grounds as he did with respect to the Eighth Amendment claim. After reviewing the record, the court finds that there is no evidence that defendant acted negligently in his examination of plaintiff or in his treatment recommendation, including the decision to defer surgery. Plaintiff has offered no expert evidence supporting his malpractice claim. Accordingly, defendant should be granted summary judgment as to the malpractice claim.

Finally, plaintiff alleges that defendant slandered him during the July 24, 2006, examination by telling him, before the examination was performed, that nothing was wrong with him and he was not getting knee surgery. Without admitting that he made this statement,

defendant moves for summary judgment on grounds that the allegations do not state a colorable claim for slander.

To state a claim for defamation (which includes slander), plaintiff must establish: (1) an intentional publication to a third person, (2) of a statement of fact, (3) that is false and unprivileged, and (4) has a tendency to injure or cause special damages. Smith v. Maldonado, 72 Cal.App. 4th 637, 642, 85 Cal.Rptr.2d 397 (1999). A communication is defamatory if it "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." Restatement (Second) of Torts § 559 (1977).

Defendant argues that the statements he allegedly made to plaintiff are not susceptible of a defamatory meaning. Defendant argues that the statements were a medical opinion that plaintiff had nothing wrong with him. The court agrees. The statements, if made, would not have harmed plaintiff's reputation or deterred third persons from associating with him.

Defendant also moves for summary judgment as to the defamation claim on grounds that the statements made were not published because there is no evidence that a third party heard them. In his opposition, plaintiff argues that correctional officers posted fifteen feet across the hall from where the statement was made may have heard it. While it is unlikely that anyone else heard the statements, the court need not reach this argument because it is clear that the statements were not defamatory.

Accordingly, IT IS HEREBY RECOMMENDED that defendant Cullen's motion for summary judgment (no. 194) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections

shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 11/10/09

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

an29.sj(2)